

January 5, 2018

**BY ECF – PUBLIC VERSION**

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

  Re: *Purdue Pharma L.P., et al. v. Intellipharmaceutics Int'l Inc., et al.*, No. 17-392 (RGA)

Dear Judge Andrews:

  We write on behalf of Defendants Intellipharmaceutics International Inc., Intellipharmaceutics Corporation, and Intellipharmaceutics Ltd. (collectively, "Intellipharmaceutics") to respectfully request leave to file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), with respect to U.S. Patent No. 8,309,060 ("the '060 patent") asserted against Intellipharmaceutics in the above-captioned matter.

**Background and Implication of the Request**

  Multiple claims of the '060 patent have been held invalid as obvious. *Endo Pharms Inc. & Grunenthal GmbH v. Teva Pharms USA, Inc. et al.*, C.A. No. 1:12-cv-08060-TPG-GWG, D.I. 220, at 40, 147, 154 (S.D.N.Y. Aug. 18, 2015) ("the SDNY Decision," excerpts of which are attached as Ex. "A"). The patent owner Grunenthal GmbH ("Grunenthal") appealed the SDNY Decision. (Appeal No. 15-2021). After the appeal was fully briefed, Grunenthal moved to stay the appeal relating to the '060 patent. (C.A. No. 15-2021, Dkt. 197 (Fed. Cir. Oct. 17, 2017), excerpts of which are attached as Ex. "B"). According to Grunenthal's filings, "the FDA determined that the [post-marketing] data did not show that the reformulation [of Endo's oxymorphone tablets to incorporate the supposedly abuse-deterrent '060 patent technology] could be expected to meaningfully reduce abuse," and Grunenthal predicted that the FDA would not approve any ANDA applications for oxymorphone products incorporating the ineffective '060 patent technology. (Ex. B, at ECF-stamped pages 9 (Grunenthal's motion brief, p. 4), 23 (Ex. 1 to Grunenthal's brief, FDA News Release, p. 1)). Grunenthal argued that this situation rendered "moot" its appeal. (*Id.* at ECF 9). The Federal Circuit granted Grunenthal's request and stayed "the appeals directed to . . . the '060 patent, pending FDA agency action regarding the Opana ER CRF product in suit." (C.A. No. 15-2021, Dkt. 203 (Fed. Cir. Oct. 26, 2017), attached as Ex. "C").

  Various companies are defending against allegations of infringement of the same '060 patent in this District.[1] These defendants are thusly deprived of the opportunity to rely on a Federal Circuit decision for the foreseeable future. However, Grunenthal's actions also mean

---

[1] C.A. Nos. 15-687 (GMS) (v. Alvogen), 15-1152 (RGA) (v. Amneal), and 17-392 (RGA). Both the Alvogen and Amneal cases are scheduled for trial in April, 2018.

The Honorable Richard G. Andrews
January 5, 2018
Page 2

that the SDNY Decision stands. Consequently, the findings and decisions by the S.D.N.Y. court can, and do, generate an estoppel effect in multiple pending cases in this District. *See Blonder-Tongue Labs. v. Univ. of Illinois*, 402 U.S. 313, 348 (1971). A decision of patent invalidity by a U.S. District Court gives rise to collateral estoppel in this District. (*See, e.g., Indivior Inc. et al. v. Teva Pharms USA, Inc.*, C.A. No. 16-178-RGA, Order, D.I. 19 at ¶ 3 (D. Del. Oct. 10, 2017), attached as Ex. "D").

**A Comparison of Patent Claims Shows That the Motion Will Succeed**

All twelve (12) asserted claims of the '060 patent in the S.D.N.Y. case (claims 1, 4, 9, 24-25, 27, 29-34) are held invalid as obvious. (Ex. A, at 40, 147, 154). Plaintiffs in our case asserted a total of sixteen (16) claims against Intellipharmaceutics. The two sets of claims do not completely overlap. However, Grunenthal's strategic selection of asserted claims cannot prevent the full estoppel effect. Every single '060 patent claim asserted against Intellipharmaceutics has at least one counterpart in the SDNY Decision that has been invalidated for obviousness and serves as a basis for applying estoppel.

**Group 1 Asserted Claims – Explicitly Invalidated.** ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ (Plaintiffs' Initial Infringement Contentions, at 3 (chart), attached as Ex. "E"). These ten (10) claims have been *specifically and explicitly invalidated as obvious* in the SDNY Decision. (Ex. A, at 40, 147). Plaintiffs should be estopped from relitigating infringement of these Group 1 claims.

**Group 2 Asserted Claims – Necessarily Invalidated Because of Claim Dependency.** ▅▅▅▅▅ (*See* Ex. A, at 40). "A broader independent claim cannot be nonobvious where a dependent claim stemming from that independent claim is invalid for obvious." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009) (judgment violating this principle vacated for new trial). Three (3) asserted claims in this action, ▅▅▅▅▅▅▅▅ are claims from which an already-invalidated claim ▅▅▅▅▅ depends. Therefore, these three claims are *necessarily invalidated as obvious* by the SDNY Decision. Plaintiffs should be estopped from relitigating infringement of these Group 2 claims.

**Group 3 Asserted Claims – Necessarily Invalidated for Covering a Broader Scope Than an Invalidated Claim.** The axiom that a broader independent claim must be obvious when a narrower dependent claim has been found obvious is but a special case for the patent law principle that, once a subject matter was found to be obvious, a patent claim that encompasses at least the obvious subject matter is also obvious. *Aventis Pharma Deutshland GmbH v. Lupin, Ltd.*, 499 F.3d 1293, 1300 (Fed. Cir. 2007) ("[T]he question [of whether the subject matter in a narrower claim is obvious] is dispositive of the obviousness of claim 1 as well, because claim 1 is to a broader genus containing the same subject matter."); *Ex parte Kubin*, 2007 Pat. App. LEXIS 13, at *10 (B.P.A.I. May 31, 2007) (Precedential Opinion, attached as Ex. "F") ("A single, obvious species within a claimed genus renders the claimed genus unpatentable under § 103."), *aff'd* 561 F.3d 1351, 1361 (Fed. Cir. 2009). The *form* of claim dependency is not required for the estoppel effect. *See Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1320 (Fed. Cir. 2007) (ruled-obvious claims *from a different patent* rendering the claims of the patent-

in-suit invalid as obvious, because the difference between the two sets of claims is "not patentably significant").

As shown below, the remaining three (3) asserted claims against Intellipharmaceutics in this action, i.e. ███████████ have broader scope than SDNY-invalidated claims, for example claim 34. Therefore, the SDNY Decision *necessarily resolved the issue* of whether ███████████ are each invalid as obvious. Plaintiffs should be estopped from relitigating infringement of these Group 3 claims.

To resolve the proposed Rule 12(c) motion, the comparison of claim scope requires only a side-by-side reading of the claim language, which will show, for example, that the already-invalidated claim 34 contains all claim limitations of claim 2 (bolded parts in the chart below) plus additional claim limitations (the rest of claim 34). Therefore, claim 34 is a narrower claim; its scope is completely within the scope of claim 2. Indeed, it could have been re-arranged to take the form of a dependent claim of claim 2. What renders claim 34 obvious also renders claim 2 obvious. A similar analysis can be made with respect to the other two claims in Group 3 (███████████), and the comparison is just as straightforward.

| Claim 34 (invalidated in the SDNY Decision) | Claim 2 (asserted against Intellipharmaceutics) | Claim 34 re-arranged in the form of a dependent claim of claim 2 |
|---|---|---|
| **A dosage form according to claim 1, which is in the form of a tablet**, wherein the one or more active ingredients with abuse potential (A) is/are selected from the group consisting of oxymorphone, oxycodone, tapentadol and the physiologically acceptable salts thereof; wherein the polymer (C) is polyethylene oxide having a molecular weight of from 1-15 million g/mol; and wherein the content of polymer (C) is at least 30% by weight relative to the total weight of the dosage form. | **A dosage form according to claim 1, which is in the form of a tablet.** | A dosage form according to claim 2, wherein the one or more active ingredients with abuse potential (A) is/are selected from the group consisting of oxymorphone, oxycodone, tapentadol and the physiologically acceptable salts thereof; wherein the polymer (C) is polyethylene oxide having a molecular weight of from 1-15 million g/mol; and wherein the content of polymer (C) is at least 30% by weight relative to the total weight of the dosage form. |

For the foregoing reasons, Intellipharmaceutics respectfully requests leave to file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). A proposed order is attached for the Court's consideration. Intellipharmaceutics has made a reasonable effort to reach agreement with Plaintiffs on the matters set forth in this letter, including oral communications with Delaware counsel, but were unable to reach agreement.

The Honorable Richard G. Andrews
January 5, 2018                                                                                                              Page 4

      We are available at the Court's convenience should Your Honor wish to discuss this request.

                                                          Respectfully submitted,

                                                          *Eve H. Ormerod*

                                                          Eve H. Ormerod (#5369)

Enclosures

cc:      Clerk of Court (via hand delivery and CM/ECF)
          All Counsel of Record (via email)